HARRIS, UPHAM & CO., INC., Appellant,

v.

John L. BALLANTYNE, Appellee.

No. 18858.

Court of Civil Appeals of Texas, Dallas.

May 6, 1976.

Rehearing Denied June 3, 1976.

C. Taylor Ashworth, Jenkens & Gilchrist, Dallas, for appellant.

Samuel B. Paternostro, Charles J. Paternostro, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

Harris, Upham & Co., Inc. appeals from a take-nothing judgment in its action against John L. Ballantyne for unjust enrichment.

On October 29, 1973, appellee Ballantyne presented a certificate representing seventeen shares of stock in E. I. DuPont deNemours to Harris, Upham & Co., Inc., a stockbroker's firm in Dallas and requested that the stock be sold. Ballantyne did not state to appellant's representative at that time whether the certificate represented common or preferred stock; however, such representative, after inspecting the certificate, issued a receipt for common stock. Thereafter, Ballantyne was paid the proceeds of the sale of seventeen shares of common stock, less commissions, in the amount of $3,375.40. The certificate was processed by appellant through its New York office and delivered to DuPont's transfer agent in New York. At that time it was discovered that the certificate represented preferred stock and not common stock. Consequently, the transfer agent returned the certificate to Harris, Upham & Co. Appellant then processed the certificate, sold the shares at the preferred stock price of $857.82 and credited appellee's account in the amount of $2,517.58. Upon Ballantyne's refusal to pay the amount, Harris, Upham & Co. filed suit seeking restitution alleging that appellee's retention of these funds which had been mistakenly paid would constitute unjust enrichment.

Following a nonjury trial, the court found there was insufficient evidence to prove that (1) appellee delivered preferred stock rather than common stock to appel-

lant, and (2) appellee had been unjustly enriched. The court also found that appellant was estopped from asserting its claim because of waiver, and the parties had reached an accord and satisfaction. We reverse the judgment because the court's finding of insufficient evidence that appellee tendered preferred stock rather than common stock is against the great weight and preponderance of the testimony, and there is insufficient evidence of waiver, estoppel, or accord and satisfaction.

In one point of error, appellant contends that the trial court erred in finding, as a matter of law, that the evidence was insufficient that the appellee tendered preferred stock because appellee was bound by his judicial admission in open court that such stock was preferred. Appellant relies upon a statement made by Ballantyne that to the best of his knowledge a copy of the stock certificate shown to him at the trial was a copy of the same certificate he presented to appellant-company and that the signature appearing thereon was his signature. However, the record reveals that Ballantyne later stated that he was not positive that the copy presented to him was actually the certificate he presented to the appellant and that he would have to see the original to be certain. Appellee admitted receiving a $3,375.40 payment for the sale of the stock, but he never admitted that he knew that the certificate tendered by him represented preferred stock. In fact, he testified that he was relying on the appellant's experts to tell him the type of stock he owned and to assure that he received an adequate payment. He also testified that he was unexperienced in handling shares of stock and had inherited this certificate from a kinsman. From a review of the entire record, we hold that there was no judicial admission by Ballantyne concerning the nature of the stock certificate in question.

Appellant's main thrust on appeal is that the trial court erred in finding insufficient evidence that Ballantyne tendered preferred stock since such finding is against the great weight and preponderance of the evidence. Appellant attempted to prove that preferred stock had been tendered by appellee by (1) producing a copy of the preferred stock certificate with the same stock certificate number as that written on a receipt given to appellee at the time of transaction, and (2) showing a series of transactions beginning with appellee's presentment to appellant's representative through return of the certificate to appellant by DuPont's transfer agent. The photostatic copy of a stock certificate representing seventeen shares of preferred DuPont deNemours with John Ballantyne's signature showing assignment and transfer was introduced into evidence and is before us in its original form. An inspection of this exhibit reveals that the quality of the copy is poor and the certificate number on the copy is unreadable. Appellee contends that since this copy cannot be positively identified by certificate number with the receipt given to appellee at the time of the transaction, appellant has failed to prove that the certificate was the one presented by him. Such argument disregards the fact that on the face of the copy his name, the words "Shares of the Preferred Stock," and on the back his signature are clearly readable. Although there is no testimony to show appellee did not trade in the stock at any other time, he did testify that this was the only stock he sold that day. Appellant introduced into evidence a series of computer print-outs showing the transactions involving this certificate from the time it was presented by appellee to appellant through the transfer to DuPont's transfer agent and back to appellant. The date of presentment was October 29, 1973, and the first transaction was recorded on October 31, 1973, by appellant showing receipt of seventeen shares of DuPont common stock. On November 1, 1973, this certificate was deposited with the Depository Trust Company en route to the transferee. The next transaction shows a return of the certificate from the transfer agent and deposit in the Depository Trust Company on November 2, 1973. Appellant's records were adjusted on November 15, 1973, to reflect preferred instead of common stock. Finally, on December 13, 1973, the preferred stock was sold.

The dates of these transactions coupled with the testimony that appellee did not sell other stock on the same day identifies the certificate for preferred stock as the one presented. Appellee did not offer any evidence to show his trading in any other stocks which could create a doubt or confusion. No evidence was produced by appellee to show that he tendered a certificate for common stock.

This being a nonjury case, the trial court was the judge of the credibility of the witnesses and the weight to be given their testimony and the findings of the court are entitled to the same weight and conclusiveness on appeal as the verdict of the jury. An appellate court may set aside a finding or judgment of the trial court when either is without any substantial support in the evidence or where such finding is against the great weight and preponderance of the evidence. Where the finding of the trial court is attacked as being against the weight of the competent evidence, we are required to weigh and consider all of the evidence in the case regardless of whether there is some evidence of probative force to support the judgment. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Robinson v. Faulkner*, 422 S.W.2d 209, 210–11 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.). Following this well-established rule, we have examined all the testimony and find that the cumulative effect of same demonstrates conclusively that ·by the great weight and preponderance of the evidence appellee Ballantyne did present a certificate of preferred stock to appellant's agent on the occasion in question. We, therefore, hold that the trial court's finding to the contrary is against the great weight and preponderance of the evidence and must be set aside.

For the same reasons, the trial court's finding that the evidence is insufficient to show that appellee Ballantyne was unjustly enriched is also against the great weight and preponderance of the evidence. Ballantyne attempted to show through monthly statements sent to him by appellant that the appellant traded in commodity accounts in the name of appellee to recover any losses from the stock transaction and thereby destroyed any claim it might have for unjust enrichment. This testimony was rebutted by appellant's showing that the statements were identified by one account number belonging to another party and were mistakenly addressed to appellee. After considering all of the evidence we hold that appellant adequately showed that it had not traded a commodity account in the name of appellee. Since the great weight and preponderance of the evidence shows that appellee presented a preferred certificate rather than a common certificate it necessarily follows that appellee would be unjustly enriched if allowed to retain the difference in the amount paid to him for common stock and the amount received for preferred stock.

We agree with appellant's contention that there is insufficient evidence to support the trial court's finding that appellant had waived its rights to recover the amount paid appellee. In defense of the trial court's finding, appellee contends that a monthly statement for his account dated August 31, 1974, indicating a "write-off" of $2,551.58 constitutes a waiver of any rights appellant may have in this cause against appellee. We cannot agree. A waiver occurs when one dispenses with the performance of something which he has the right to exact, or occurs where one in possession of any right, whether confirmed by law or contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it. *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855, 865 (1958). A review of the record shows that the "write-off" of the account was a mere accounting function with the intent to classify the debt as a bad debt or one of doubtful collectibility. Moreover, appellant's cause of action was pending and no motion was made to dismiss same, thereby negating any idea of waiver.

Appellee also argues that because of the monthly statement the appel-

lant is prevented by equitable estoppel from asserting this cause of action. We cannot agree. The elements of an equitable estoppel are that the party claiming it must have been misled by a wilful misrepresentation or concealment of material facts by a knowledgeable party and he must have relied or acted on it to his detriment. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952). There is no evidence that appellee relied upon the monthly statement to his prejudice. To the contrary it appears that appellee immediately retained legal counsel upon receipt of this statement and through counsel contacted appellant to resolve the conflict. We, therefore, hold that there is no basis in law for the trial court's finding of estoppel.

Nor can we agree with the trial court's finding that appellant's cause of action was barred by an accord and satisfaction. An "accord" is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a liquidated or disputed claim arising in either contract or tort something different from what he is or considers himself entitled to; and "satisfaction" is the execution or performance of this agreement. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969); *Texas & P. Ry. v. Poe*, 131 Tex. 337, 115 S.W.2d 591, 592 (1938). Wholly missing from the record are two essential elements of accord and satisfaction: (1) An agreement, and (2) consideration. The absence of either of these is fatal to the trial court's conclusion of law. *Pickering v. First Greenville National Bank*, 495 S.W.2d 16, 19 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.); *Snyder v. Johnson*, 256 S.W.2d 898, 900 (Tex.Civ.App.—Amarillo 1953, writ ref'd n. r. e.).

The judgment of the trial court is reversed and the cause is remanded to the trial court.

Reversed and remanded.